**DALLAS RAILWAY & TERMINAL CO. v. STRICKLAND TRANSP. CO.**

No. 5983.

Court of Civil Appeals of Texas. Amarillo.

Oct. 31, 1949.

Rehearing Denied Nov. 28, 1949.

:' Burford, Ryburn, Hincks & Ford, Clarence A. Guittard, Howard Jensen, Dallas, for appellant.

Currie & Muse, Dallas, for appellee.

STOKES, Justice.

This suit was instituted by the appellee, Strickland Transportation Company, a corporation, against the appellant, Dallas Railway & Terminal Company, also a corporation, for damages to a semi-trailer belonging to appellee, resulting from a collision at a street intersection in Dallas between the trailer and one of the appellant's street cars. Appellant filed a cross action in which it sought to recover damages to its street car, alleging that the collision was due to the negligence of the driver of the truck and trailer. The case was submitted to a jury upon special issues and, upon the answers made thereto, the court rendered judgment against appellant upon its cross action and in favor of the appellee for the sum of $2,000. Its motion for a new trial being overruled, appellant perfected an appeal to the Court of Civil Appeals of the Fifth District at Dallas and the case has been transferred to this court by order of the Supreme Court.

Appellant complains of the judgment and seeks to have it reversed upon errors assigned in which it contends, first, the court erred in overruling its special exception to the allegations of appellee's petition relative to the measure of damages; in permitting testimony in accordance with such allegations; and in submitting the measure of damages in accordance therewith; secondly, that the court erred in overruling its motion for a new trial because there was no evidence to support the jury's findings as to damages; thirdly, in sustaining objections of appellee to the introduction of a traffic ordinance of the city of Dallas offered in evidence by appellant; and, fourthly, in refusing to submit to the jury certain special issues requested by it relating to the manner in which appellee's truck and trailer entered the street intersection.

Appellee pleaded that its trailer was an insulated one, designed for the movement of perishable foods, and that the collision between the trailer and the street car strained and disconnected the insulated joints so that it would not hold a low temperature and rendered it useless for the purpose of transporting perishable foods "until its body is repaired by rebuilding." It alleged further that the rear springs and axle of the trailer were torn loose from the frame and "must be repaired;" and that as a result of the collision, its trailer had been damaged in the sum of $2,000. Appellant specially excepted to those allegations because they failed to allege the market value of the vehicle immediately before and immediately after the collision and its special exception was overruled by the court. Appellee's president, L. R. Strickland, testified he had been engaged in the business of common carrier of freight by motor vehicles for twenty-seven years and that he was familiar with the value of trailers, particularly those of the refrigerator type. He said that the rea-

sonable cash market value of the trailer at Dallas, before the collision, was approximately $2,500, and that, immediately after the collision its value was approximately $500. In Special Issue No. 31 the court submitted to the jury the question of the difference between the reasonable cash market value of the trailer immediately before and immediately after the collision and the jury found such difference to be $2,000. The actions of the court in overruling appellant's special exception; in permitting the witness Strickland to testify concerning the value of the trailer before and after the accident, over the appellant's objection; and in submitting the question of the difference between its value before and after the collision, constitute appellant's first complaint. It contends that the pleading did not give to it any notice as to what theory appellee would adopt in establishing its damages, that is, whether it would seek judgment for the difference in the value of the trailer before and after the collision, or for the reasonable costs of repairs necessary to restore the trailer to its condition before the collision and, therefore, its special exception should have been sustained. It contends further that the petition implied and, therefore, led appellant to believe appellee would seek judgment for the cost of repairs made necessary by the collision and that its objection to the testimony relative to the market value should have been sustained.

■ It has been held many times by our courts that the true measure of damages to personal property injured but not totally destroyed is founded upon the principle of fair compensation for the pecuniary loss sustained. The rule adopted in measuring such damages is ordinarily the difference in value of the article damaged immediately before and immediately after the damage. It is only in exceptional cases that this rule does not embrace all the recoverable elements of damage and it is supported by the great weight of authority in this jurisdiction and many others. Chicago, R. I. & G. R. Co. v. Zumwalt, Tex. Com.App., 239 S.W. 912; Tinney v. Williams, Tex.Civ.App., 144 S.W.2d 344, and authorities cited in those cases.

■ It has likewise been held in numerous cases that the reasonable costs of repairs to a vehicle damaged in a collision by negligence, so as to restore it to its condition before it was damaged, is an acceptable and proper measure of the damage. In those cases, however, that was the measure of damages pleaded by the plaintiff and upon which judgment was sought. Manifestly it would not be fair to a defendant for the plaintiff to sue for the difference in the market value of the vehicle and then establish his damages by the introduction of various items of the costs of repairs, such as parts, material and labor necessary to restore it to its original condition. Pecos & N. T. R. Co. v. McMeans, Tex.Civ. App., 188 S.W. 692; Milby Auto Co. v. Kendrick, Tex.Civ.App., 8 S.W.2d 743; El Paso Electric Co. v. Collins, Tex.Civ. App., 10 S.W.2d 397; Tinney v. Williams, supra, and authorities there cited. The gravamen of appellant's contention here is that in its pleading, appellee adopted the reasonable costs of repairs as the theory upon which it sought judgment and then, by the evidence, sought to establish its right to a judgment upon the market value theory. We do not so construe the pleading. It is well settled that the plaintiff in such cases is not required to allege the measure of his damages. When the facts concerning the injury are alleged and supported by the evidence, the measure of damages is a question of law for the court. That is the effect of appellee's petition in this case. The facts surrounding the collision, the manner in which it occurred and the result and damage caused to the trailer are fully alleged and the pleading states, as a result thereof, appellee had suffered damages in the sum of $2,000. The mere fact that it alleged the trailer would be useless for its purpose of transporting perishable foods "until it had been repaired and rebuilt" and that the springs and axle were torn loose from the frame and "would have to be repaired" did not restrict appellee to the theory of the reasonable costs of repairs as the basis upon which it sought judgment. While it was not necessary to allege the trailer would have to be repaired, and that allegation was superfluous, it was

not of such a nature as to deprive appellee of its right to establish its damages in the ordinary and accepted manner. There was no allegation that repairs had been made nor that any labor or material had been utilized and paid for by appellee, nor that specific repairs would be made and that their costs would amount to any particular sum. In our opinion, appellant's first contention is not well taken and it will be overruled.

■ Appellant next contends that the judgment should be reversed because there was no competent evidence to support the jury's finding as to damages. Appellee's president, L. R. Strickland, testified that he had been engaged in the business of common carriage of freight by motor vehicles since he was sixteen years of age and that he was forty-three years of age at the time of the trial. He said that, during that time he had had occasion to become familiar with the value of trailers and particularly refrigerator trailers of the type involved in the collision. He said that, by reason thereof, he knew the cash market value of the used trailer damaged by the collision at Dallas on May 20, 1946, the date the collision occurred; that immediately before the collision its value was approximately $2,500; and immediately after the collision, its value was approximately $500. Appellant objected to this testimony upon the ground that the witness was not qualified to express an opinion as to the value of the trailer. The objection was overruled by the court and this action of the court constitutes appellant's second complaint.

■ The rule is well established and of long standing that, when a witness states he knows the market value of an article, he is prima facie qualified to testify concerning it. Even a non-expert witness, who is familiar with the property or the facts, may give his opinion although he might not be able to qualify as an expert. Strickland testified on cross-examination that, while he was not in the business of selling secondhand trailers, his company bought and sold trailers and that those sold were secondhand and those which they bought were new ones. We think the witness was qualified to testify concerning the value of the trailer and this contention of appellant will be overruled. State v. Richardson, Tex.Civ.App., 215 S.W.2d 359; City of Trinity v. McPhail, Tex.Civ.App., 131 S.W. 2d 803; North East Texas Motor Lines v. Hodges, Tex.Civ.App., 141 S.W.2d 386; Leyendecker v. Harlow, Tex.Civ.App., 189 S.W.2d 706.

Appellant offered in evidence an ordinance of the city of Dallas, which provides: "When a street car has started to cross an intersection, no driver of a vehicle shall drive upon or across the car tracks within the intersection in front of the street car."

The court sustained appellee's objection to the introduction of the ordinance upon the ground that it did not apply to street intersections where a traffic signal light was in operation. Appellant assigns this action of the court as error because the ordinance itself contains no exception or limitation. There was a sharp conflict in the testimony as to whether the driver of appellee's truck and trailer entered the intersection before the street car entered it or whether the street car was the first to do so, and appellant insists it was entitled to put the ordinance in evidence because, if its street car entered the intersection before the driver of the truck and trailer entered it, as could have been found by the jury under the evidence, the result would necessarily have followed that appellee's truck driver was guilty of negligence per se in violating the ordinance by driving the truck upon or across the street car track within the intersection in front of the street car. It asserts that this would have been the result even though the motorman of the street car was violating other traffic regulations by entering the intersection at the time and in the manner in which he did so.

■ Appellee introduced another traffic ordinance of the city of Dallas which provides that the driver of any vehicle and motorman of any street car shall obey the instructions of any official traffic control device placed in accordance with the traffic

code unless otherwise directed by a police officer. It further provides that, whenever traffic is controlled by traffic control signals exhibiting the word "go," "caution," "stop," or exhibiting different colored lights successively of green or "go," red or "stop," vehicular traffic facing the red or "stop" signal shall stop as so directed before entering the street cross-walk at an intersection and remain standing until the green or "go" signal is shown. It further provides that vehicular traffic facing the green signal, meaning "go", may proceed straight through the intersection. The ordinance simply means that all vehicular traffic, including trucks and street cars, shall obey the ordinary electric traffic signals found at most all congested intersections in cities in this country commanding traffic to stop upon a red signal and proceed through the intersection upon a green one. There was such an electric traffic signal at the intersection where the collision here involved occurred. The ordinance offered in evidence by appellant is a separate ordinance from the one introduced by appellee and admitted by the court and, strictly construed according to the exact language and words used in them, they would seem to conflict with each other. It is the duty of the courts, however, to construe such enactments so as to harmonize them where possible and uphold both of them if it can reasonably be done. In our opinion the two ordinances do not necessarily conflict with each other. When construed together they simply mean that, when a street car has started to cross an intersection, no driver of a vehicle shall drive upon or across the car tracks within the intersection in front of the street car; but, whenever the traffic is controlled by electric traffic control signals, and such signals exhibit a red light in face of or in front of a driver, he shall bring his vehicle to a complete stop and those vehicles facing a green light are at liberty to proceed through the intersection. This construction makes the ordinance offered by appellant subservient to the provisions of the ordinance pertaining to electric traffic

signals at intersections, where the latter exist, but in full force and effect at others. Any other construction would deprive the operators of trucks and automobiles of the right to proceed through a street intersection upon a green or "go" signal at the caprice of the motorman of a street car if he saw fit to violate the traffic laws of the city and proceed into the intersection while a red or "stop" signal was exhibited against him. Certainly the law-making authorities of the city of Dallas could not have intended to confuse the traffic of its congested streets and intersections in any such manner. We conclude, therefore, that the court did not err in sustaining appellee's objection to the introduction of the ordinance offered by appellant.

Appellant requested the court to submit to the jury a special issue requiring a finding as to whether or not the driver of appellee's truck "failed to slow down before entering the intersection at the time and on the occasion in question." It also requested special issues as to negligence and proximate cause if the jury answered this special issue in the affirmative. The court refused to submit the requested special issues and appellant contends that the court erred in doing so. By Special Issue No. 18, the court required the jury to find whether or not the truck driver failed to check his speed as he approached the street car track and by Special Issue No. 21 it required a finding as to whether or not the truck driver increased the speed of his truck as he attempted to cross the intersection. Both of these special issues were answered in the affirmative by the jury and they submitted substantially the same questions involved in the special issues requested by appellant. There was, therefore, no error committed by the court in refusing appellant's requested issues.

We have carefully examined all of the assignments of error and contentions urged by appellant and, in our opinion, none of them presents reversible error. The judgment of the court below will, therefore, be affirmed.