McGHEE v. ARBUCKLE.

No. 15117.

Court of Civil Appeals of Texas. Fort Worth.

April 14, 1950.

Ivan Irwin, of Dallas, for appellant.

Edward C. Fritz, of Dallas, for appellee.

SPEER, Justice.

This is an appeal by Geo. S. McGhee, doing business as Dallas Storage and Warehouse Co., from an adverse judgment rendered in a non jury trial, wherein Mrs. Bess Arbuckle, joined by her husband, claimed loss of some articles of household goods and damage to other articles by negligence of the warehouseman while in storage.

Appellant defended under a general denial and a special plea that during a part of the time involved he was not the owner and operator of the Dallas Storage and Warehouse Company.

Appellant's first point of error is to the effect that the court erred in entering judgment for appellee because (a) the testimony of appellee shows that appellant did not have sole and exclusive possession of the goods, and (b) there was no testimony that appellant was guilty of negligence resulting in the damages complained of and that under such conditions negligence will not be presumed.

The undisputed evidence shows that appellee had purchased parts of the household goods in 1936 and other parts, including the gas range and electric refrigerator, as late as 1940; that she had given a lien on all the goods to secure a note for $150. That she had, on about January 7 or 8, 1943, stored all of said goods in a large room where she had been living, in a dwelling occupied by an old couple. She said the goods were all in "perfect" condition; she had covered the pieces to protect them from dust and had hung coverings over the windows to exclude the light so as to prevent fading, locked the door and had the key. That on about January 12, 1943, the holder of her note sued in justice court and had the furniture "picked up" (under writ of sequestration). That the officer took the goods and stored them with appellant on the day he picked them up. The stored goods were the separate property of Mrs. Arbuckle.

The record discloses that at the time the goods were stored with appellant by the officer, appellee was doing business under the trade name of A & A Bonded Transfer and Storage Co., and apparently at a later date, time not shown, he operated under the name of Dallas Storage and Warehouse Company. The billheads upon which his statements of storage charges were made to appellee bear the names of both companies, one just under the other, shown to be at the same address. In each instance appellee testified that she dealt with appellant personally.

It was stipulated that the officer who took the goods under the writ of sequestration would testify if present that the goods were apparently in good condition when he stored them with appellant on Jan. 13, 1943, under an agreement with the holder of the note and appellee. That under that agreement the appellee would later pay the storage charges. Appellee did pay the storage charges to appellant from that date to some time in 1948 and had bills and receipts therefor.

Appellee paid the note and the lien was discharged. In 1946, appellee took certain of the goods out of storage, and in 1948, requested delivery of the remain-

der to her. She saw the furniture roughly stacked in appellant's place of business and wanted to examine it and her request was refused by appellant until she would sign a statement showing that she had received all of the goods and that they were in good condition; this she refused to do until she could examine the goods. She then filed suit and procured a writ of sequestration, under which she recovered such of the goods as appellant then had on hand. Certain enumerated articles were missing and all the remainder was badly damaged.

It is apparent that at the time appellant claimed in his pleadings that he did not have possession of the goods, he referred to the four or five days they were stored in the room of the residence. We say this because his bills presented to and paid by appellee showed storage charges beginning with January 13, 1943.

■ In the point before us, it is claimed that no negligence of appellant is shown resulting in damage to the goods. The undisputed testimony shows that the goods were in perfect condition four days before appellant received them, all wrapped and neatly covered and locked in a room. The officer who took them four or five days later said they were "apparently in good condition." When they were last seen in appellant's possession, they were unwrapped, uncovered, scratched, rusted, broken, dirty and filthy covered with grease or tar, the varnish all off, veneer loose, broken, peeling off and badly discolored; the upholstering was ruined, torn and split, and several pieces entirely missing. We think it would not require a presumption, nor an inference, to conclude that appellant had not exercised ordinary care for the protection of the goods. Appellant's bills rendered showed charged for "wrapping" and "warehouse handling." Such undisputed facts are very strong circumstances of a lack of due care by appellant and are sufficient to support the implied findings by the court of negligence and proximate cause without resort to inferences. See also Huie v. Lay, Tex.Civ.App., 170 S.W.2d 823.

Rhodes v. Turner, Tex.Civ.App., 171 S.W.2d 208, 209, by this court, mandamus to certify refused by the Supreme Court, Rhodes v. McDonald, 141 Tex. 478, 172 S.W.2d 972, involved bailment of an automobile to a parking lot owner; the car was stolen from the possession of bailee. The same principle was before the court now before us. A summary of our holding is found in key No. 10 of the syllabi, where it is said: "Where chattels are delivered to bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes the bailee's negligence or other fault to be the cause, and bailee has burden of showing existence of other causes consistent with due care." Many cases are cited in that opinion in support of the rule.

■ The judgment recites that appellant appeared at the trial; he did not testify nor did he offer any witness for that purpose. These things are within themselves strong circumstances against him and tend to support the truth of appellee's testimony. Lindsey v. State, Tex. Civ.App., 194 S.W.2d 413, writ refused, n. r. e.; Smith v. Smith, Tex.Civ.App., 225 S.W.2d 1001.

The second point of assigned error complains because the court permitted a witness to testify what he as a dealer would pay for the household goods, in an effort by appellee to establish the reasonable market value of the goods after damage was claimed to have been sustained.

The witness had been a dealer in second-hand furniture in Dallas for thirty years and showed himself qualified to give an expert opinion of market values. He inspected these goods nearly a month after appellee had gotten them into her home and had cleaned them up as best she could but no repairs had been made The missing articles were described in hypothetical questions. The approximate dates of purchase, prices paid, and how used were furnished him. He testified as to what in his opinion would be the natural deterioration of the goods during the period of time since they were purchased and

the date of his examination. When he examined the furniture he said it was in a "corrupt" condition; it was broken, split and stained. At this juncture the witness was taken over by appellant on voir dire; he said he examined the furniture with a view of determining what he as a dealer would pay for it, and that he would expect to make a profit on it when he sold it. The witness was then asked by appellee's counsel as to the reasonable market value in Dallas at that time and not what price he as a dealer would pay, that is, the reasonable market value in Dallas for which the goods would sell with a free buyer and a free seller, in the condition in which he saw them. He then gave his opinion as to values under the conditions inquired about; he also gave his opinion as to the natural deterioration from age and the amount of the lessened value because of its present condition. Even though he had said he placed values on it with a view to purchasing it for re-sale, we do not find in the record what he would have paid for it.

■ As we construe the record, complicated as it is with objections and rulings of the court, we cannot sustain the challenge made to the judgment under the point of error assigned.

■ Broadly speaking, we think the measure of appellee's damage under her pleadings in this case was the difference in the reasonable market value of her goods at the time she stored them with appellant and their reasonable market value when they were returned to her, less such amount as they would have deteriorated in value as a natural consequence during that period.

Such proof, as a rule, must be made from opinions of persons shown to be in a position to know. Our courts have often recognized the difficulty, if not uncertainty, in arriving at such matters, but such testimony is usually the best and most accurate means of arriving at the true facts, and this is the ultimate purpose of the court's action.

■ Another element, perhaps, entered into the situation before us. That is the period of time from 1936 to 1948 and the obvious fluctuation of the market value of merchandise, which in a way means the changes in the purchasing power of the current United States dollar. Courts will take judicial knowledge of these things. Dallas Railway & Terminal Co. v. Strickland Transportation Co., Tex.Civ.App., 225 S.W.2d 901.

It is undisputed by appellant that when appellee finally got her goods back under a sequestration proceeding, she did not receive certain articles which appellant had received for storage. These items were a Magic Chef range, a mirror to a vanity, one mattress and two rugs, all were described, giving the approximate date of purchase, nature of former use, prices paid, etc., and their values were determined by the expert witness on a basis of being informed of the circumstances enumerated. The whole judgment was for $444.35. Appellee excepted to the amount of the judgment and filed a cross assignment of error here, but the trial court declined, on appellee's motion, to increase the amount of the judgment and we shall not revise it.

■ No findings of fact or conclusions of law were requested or filed in the case. All applicable testimony must be considered as in support of the judgment. We have carefully studied the whole record and find no error presented. We therefore overrule all points of error and affirm the judgment of the trial court.